IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| TERESA ROBBINS, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 05-438-S-MHW |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| JO ANNE B. BARNHART, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## Introduction

Currently before the Court for its consideration is Teresa Robbins's ("Petitioner") request for judicial review (Docket No. 1) of the Respondent's denial of social security disability benefits, filed October 24, 2005. Petitioner brought this action pursuant to the Social Security Act (Act), as amended, 42 U.S.C. § 405(g). The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, the administrative record ("AR") and submits its Memorandum Decision and Order as follows.

## I.
## Background

**A.    Administrative Proceedings.**

Petitioner filed an application for Disability Insurance Benefits and Supplemental Social

Security Income on November 19, 2002.  (AR 63.)  She has alleged disability since June 29, 2001. (AR 63.)  The applications were initially denied on March 04, 2003 (AR 43) and again upon reconsideration on July 08, 2003. (AR 37.)  After a timely request for a hearing was filed on August 6, 2003 (AR 36), Petitioner being represented by counsel, Andrea Cardon, (AR 33) appeared and testified before Administrative Law Judge (ALJ) Robin L. Henrie on August 19, 2004.  (AR 424.)  Vocational expert Anne Aastin and witness Brandy Faulkner also appeared and testified. (AR 424.)

ALJ Henrie considered the testimony and all other evidence of record and on January 25, 2005 issued a decision finding Petitioner not disabled within the meaning of the Act and thus not entitled to disability insurance benefits or supplemental social security income.  (AR 18.)  This became the final decision of the Commissioner when the Appeals Council declined to review the ALJ's decision on July 29, 2005.  (AR 7.)  Petitioner has exhausted all administrative remedies and is seeking judicial review pursuant to Section 405(g) of the Social Security Act.

**B.      Statement of Facts.**

At the time of the hearing before the ALJ, Petitioner was thirty-two (32) years old. (AR 29.)  She has alleged disability as of June 29, 2001, due to post traumatic stress and bipolar disorders.  (AR 63.)  Petitioner has satisfied the insured status requirement by being insured through June 2001.  (AR 61.)  She has completed high school and training as a certified nurses's aid.  (AR 91.) Petitioner's past employment experience included:  a laborer at a fruit ranch, in-home care provider, maid, and child care.  (AR 93.)

On June 22, 2001, Petitioner went to the emergency room complaining of a headache that started five days previously and an injured finger.  (AR 111.)  Petitioner reported being unable to

obtain her medication because of insurance problems.  (AR 111.)  She received an injection for

her headache and returned home.  (AR 112.)  Petitioner next returned to the emergency room on

July 7, 2001 and was upset that her finger had not been treated.  (AR 102.)  She reported that she

had been seen earlier in the day at a clinic and was told to come to the emergency room to have

surgery on her finger.  (AR 102.)  However, the attending physician, Dr. Julia Hanrahan,

reported that the previous doctor had specifically noted that Petitioner did not want the finger

evaluated.  (AR 102.)  The surgery on her finger was performed by Dr. David Lamey on July 19,

2001.  (AR 121.)

On August 13, 2001, Petitioner was seen at Terry Reilly Heath Services for significant

anxiety, depression, and anger.  (AR 167.)  She complained that her current medication,

Lorazepam, made her "sleep all the time" and she wasn't able to deal with her issues.  (AR 167.)

Doctors changed Petitioner's medication to Zoloft.  (AR 167.)

On January 2, 2002 through January 5, 2002, Petitioner was hospitalized with suicidal

thoughts.  (AR 125.)  She stated that she was also upset with her husband and was having trouble

sleeping.  (AR 128.)  Petitioner originally reported in interviews with doctors that she did not use

any drugs but later admitted to some drug use.  (AR 128.)  She initially stated that she had not

used methamphetamines (crank) for years, but she later admitted that it had only been three or

four months.  (AR 128.)  Petitioner acknowledged using marijuana three or four days before

admission to the hospital.  (AR 128.)  Doctors also spoke with Petitioner's friend, Ms. Carl,

about Petitioner's drug use.  (AR 128.)  Ms. Carl stated that Petitioner had been using crank the

previous weekend, and "she felt that [Petitioner] was coming off the crank."  (AR 128.)

Although Petitioner maintained that the last use of methamphetamines was three to four months

previous, a drug screen was positive for methamphetamines.  (AR 126.)  Petitioner was

discharged on January 5, 2002 and given the diagnosis of major depressive disorder, rule out

bipolar disorder, cannabis dependence, rule out methamphetamine abuse, and rule out

personality disorder.  (AR 125.)

On March 5, 2002, Petitioner was seen for a medication refill.  (AR 165.)  Petitioner had

stopped seeing her therapist because of a disagreement regarding her marijuana use.  (AR 165.)

Petitioner stated that she needed it to sleep but agreed to try and quit if given medication to aid

sleeping.  (AR 165.)  Petitioner was proscribed Effexor and instructed to find a new therapist.

(AR 165.)

On June 17, 2002, Petitioner went to the emergency room and was diagnosed with

allergic rhinitis.  (AR 222.)

On June 21, 2002, Petitioner went to the hospital complaining of vomiting every two

hours after taking her medication.  (AR 164.)  She also stated that she had heartburn and had

been sleeping for three weeks "nonstop."  (AR 164.)  Petitioner was diagnosed with probable

esophageal reflux.  (AR 164.)  Petitioner was again reminded to find a new therapist.  (AR 164.)

On October 16, 2002 in a psychiatric assessment, Petitioner was found to have "severe

manic depression."  (AR 190.)  About two weeks later, an abdominal ultrasound revealed that

Petitioner had symptoms suggesting "diffuse fatty infiltration/liver parenchymal disease."  (AR

206.)

On November 15, 2002, Petitioner received a comprehensive assessment performed by

All Seasons Mental Health.  (AR 179.)  In the report Petitioner stated that she does well with her

basic living skills.  (AR 182-83.)  She was able to complete shopping and meal preparation but

reported difficulty keeping a daily schedule.  (AR 183).  Petitioner felt comfortable with one on one interactions but uncomfortable in large groups.  (AR 182.)  Petitioner expressed no desire to attend school and did not have confidence in her ability to gain employment.  (AR 182.)  She reported that when she was depressed she lacked motivation and slept excessively.  (AR 179.) She reports stopping marijuana use one week previous and had not used crank for a couple of years, although hospital tests indicated use in January 2002.  (AR 180.)

On January 14, 2003, Petitioner was examined after complaints of lower back pain present since childhood.  (AR 296.)  She reported falling out of a car traveling at sixty miles per hour and receiving chiropractic care for much of her youth.  (AR 296.)

On January 15, 2003, Petitioner received an MRI of her lumbar spine.  (AR 275.)  The conclusion of the tests reported a "mild disk desiccation, small central disk protrusion L5-S1 without significant central or foraminal canal compromise."  (AR 275.)

On January 23, 2003, Petitioner was examined by a Dr. David Delawyer.  (AR 225.)  Dr. Delawyer reported that Petitioner was cooperative and attentive.  (AR 228.)  She was oriented to person, time, and place.  (AR 229.)  Petitioner reported that she has difficulty being around other people and becomes very anxious.  (AR 225.)  She reported that prior to medication she "slept 20 hours a day" and had no motivation.  (AR 226.)  During the interview, Petitioner was labile, depressed, and cried frequently.  (AR 228.)

Petitioner also reported that she had not smoked marijuana in six months and had only used crank for about one month when she was twenty-three years old.  (AR 227.)  Petitioner was diagnosed as major depressive disorder, panic disorder, and rule out bipolar disorder.  (AR 230.) Dr. Delawyer concluded:

**Memorandum Decision and Order - Page 5**

> In the examiner's opinion, the claimant would not have difficulty with cognitive activities such as understanding what is being said to her.  Given the current poorly controlled depressive symptoms, as well as significant panic symptoms, she would likely experience difficulty remembering, sustaining concentration, persisting with tasks, interacting with others, and generally being adaptable in the work setting.

(AR 229.)

On February 21, 2003, Petitioner was evaluated by Dr. Callao, medical consultant for the Disability Determination Services, to determine her Mental Residual Functional Capacity and ability to function in work-related areas.  (AR 243.)  After the examination, Dr. Callao concluded that Petitioner's concentration would be diminished due to depression, and she would have difficulty with complex instructions.  (AR 259.)  However, Petitioner demonstrated that she could perform simple types of work and would have the ability to concentrate during a work day and work week.  (AR 259.)  The evaluation acknowledged that Petitioner would have difficulty accepting criticism from others, making plans independently of others, and working with co-workers.  (AR 259.)  In addition, Dr. Callao noted that Petitioner was not "completely credible." (AR 260.)  The evidence in her file regarding substance abuse was conflicting, and Petitioner was evasive about her drug use.  (AR 260.)

On February 28, 2003, March 17, 2003, April 16, 2003, and May 2, 2003 Petitioner received steroid injections from Dr. Gussner for lower back pain.  (AR 284, 281, 278, 341.)

On June 26, 2003, Petitioner received a second Mental Residual Functional Capacity Assessment from Dr. Sanford.  (AR 313.)  Dr. Sanford also concluded that Petitioner could remember simple instructions and maintain concentration.  (AR 315.)  Dr. Sanford reported that "her activities of daily living are not significantly limited."  (AR 315.)  Petitioner's anxiety would limit her ability to interact with the public, and she would do best not deal directly with the

general public.  (AR 315.)  Dr. Sanford acknowledged that her decision making is impaired and that she had "significant problems with motivation."  (AR 315.)

During 2003 and 2004, Petitioner continued to see Dr. Gussner and received various treatments and injections for her back pain.  (AR 402-415.)  Dr. Gussner reported that Petitioner was having increasing difficulty sleeping due to the spasms in her back.  (AR 408.)  Petitioner reported a great level of stress and fatigue due to being "very busy during the day hauling kids around to different functions."  (AR 408.)  On May 27, 2003, Dr. Gussner explained that he did not have any further treatment recommendations and that Petitioner should continue to perform moderate physical activity with no specific restrictions.  (AR 411.)

## II.
## Findings of the Administrative Law Judge

In the decision issued January 25, 2005 following the hearing (AR 18-31), the ALJ made specific findings as follows:

1.      The claimant met the disability insured status requirement of the Act on June 29, 2001, the date the claimant alleged an inability to work, and continued to meet them through June 30, 2001.

2.      The claimant has not engaged in substantial gainful activity since the alleged onset date of disability as noted above.

3.      The claimant alleges the following severe impairment(s):  post-traumatic stress disorder, bipolar disorder, borderline personality disorder, depression, confusion, concentration and memory problems, sleep disorder, back pain, and difficulty sitting, standing and walking.

4.      The claimant does have severe impairment(s), which combine to significantly limit the ability to perform basic work-related activities.

5.      The exhibits and testimony do not establish that a listing is met or equaled in this case.

6.      The ALJ has determined the claimant's credibility regarding symptom testimony

as set forth in detail above in the body of the decision.  Such credibility finding are incorporated herein by reference.  It is concluded that the claimant's impairments and symptoms do not preclude the occupations suggested by the vocational expert.

7.   The claimant suffers from severe impairments, which reduce the residual functional capacity to the performance of only a limited range of unskilled light work.

8.   The claimant is unable to perform any past relevant work .

9.   The claimant is 32 years of age, which is defined as a "younger individual."

10.   The claimant has a high school education.

11.   Work skills are not at issue in this matter.

12.   Considering these vocational factors and the claimant's residual functional capacity, Medical-Vocational Rules 202.21 and 201.28 provide the framework for a finding of "not disabled."  Within this framework the claimant could perform a significant number of jobs, in the national economy, in the various occupations cited by the vocational expert.

13.   The claimant has not been under a "disability", as defined in the Social Security Act, at any time prior to the date of this decision.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); and *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); and *Flaten v. Sec'y of Health and Human Services*, 44 F.3d 1453, 1457 (9th Cir. 1995).   Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Id.*  It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner."  *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment

is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993).

The Social Security Commissioner has established a five-step evaluation process in order to determine whether a person is disabled for purposes of awarding disability benefits. 20 C.F.R. §§ 404.1520, 416.920 (1996)*; Lester v. Chater,* 81 F.3d 821, 828 n. 5 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). First, the Commissioner determines whether the claimant is engaged in substantial gainful activity. If the claimant is engaged in such activity, disability benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). The ALJ determined that the Petitioner was not engaged in any substantial gainful activity. (AR 19.)

The Commissioner then proceeds to the second step to determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1529(d)(1); and 416.929(d)(1). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied. The ALJ here found that Petitioner's impairments or combination of impairments of affective and anxiety-related disorders as well as back disorders more than minimally limited the Petitioner's ability to engage in basic work activities and did constitute a severe impairment. (AR 19.)

If the impairment is severe, the Commissioner proceeds to the third step of the evaluation

process to determine whether the claimant has an impairment which meets or equals those contained in the Listing of Impairments found in Appendix 1, Subpart P, Regulation No. 4.  20 C.F.R. §§ 404.1520(d); 416.920(e).  Appendix 1 contains a list of impairments which would prevent a person from engaging in substantial gainful employment.  If a claimant can show he or she is limited by such an impairment, disability is presumed.   In this case, the ALJ determined that Petitioner did not possess the findings upon examination which are required in order for disability to be predicated on medical considerations alone.  (AR 20-21.)  While the ALJ gave particular attention to 12.04 (affective disorders) and 12.06 (anxiety-related disorders), Petitioner's impairments did not meet or medically equal the severity of any of the listings in Appendix 1, Subpart P, Regulation No. 4.  (AR 20-21.)

If the impairment is not one that is presumed to be disabling, then the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant previously performed, i.e. whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work.  If the claimant is able to perform past work, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).  In the instant case, the ALJ determined from the evidence and testimony that the Petitioner did not retain the residual functional capacity to perform any past relevant work.  (AR 28.)

Finally, at step five the burden shifts to the Secretary "to show that, taking into account a claimant's age, education, and vocational background, she can perform any substantial gainful work in the national economy." *Pinto v. Massanari,* 249 F.3d 840, 844 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(f), 416.920(f).  The Secretary can meet this burden by proposing a

hypothetical question to a vocational expert that reflects all of a claimant's limitations.  *Roberts v. Shalala,* 66 F.3d 179, 184 (9th Cir. 1995).

In the present case, the ALJ posed a series of hypotheticals questions to the vocational expert, Ms. Aastin.  (AR 467-71.)  In the hypotheticals, the ALJ asked the expert to assume that an individual was of the same age and educational background as Petitioner and had the same limitations.  (AR 467.) Based upon the hypotheticals, the expert testified that jobs in the nation economy did exist and could be performed by someone with Petitioner's limitations.  (AR 29.) The vocational expert gave the following examples:

> 1)  Assembler (small products), D.O.T. #739.687-030 and Assembler (plastic hospital products), D.O.T. #712.687-010.  These jobs are unskilled, require light exertion and combine for a total of 200,000 jobs in the national economy; and,
>
> 2)  Call-Out Operator, D.O.T. #713.687-018 and Pin & Clip Fastener, D.O.T. #735.687-022.  These jobs are unskilled, require sedentary exertion and combine for a total of 33,000 jobs in the national economy.

(AR 29.)

The ALJ did determine that Petitioner was able to perform a full range of light unskilled work.  (AR 27.)  The ALJ further noted that Petitioner was limited to:  lifting eight to ten pounds infrequently, occasionally carrying three to four pounds, standing or walking for thirty to forty-five minutes at a time, working for five to six hours in an eight hour day, and needed a sit/stand option to name a few limitations.  (AR 27-28.)  On the basis of this review, the ALJ determined that Petitioner was not disabled within the meaning of the Act.

## IV.
## Issues Raised

The primary issue before the Court is whether the final decision of the Secretary is supported by substantial evidence and whether it is based on proper legal standards.  *Matney ex*

*rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).  Petitioner contends that the ALJ

erred in the following respects:

1)  The ALJ erred in failing to determine whether or not drug use was material or not material.

2)  The ALJ erred in finding that Petitioner's pain testimony was not credible.

3)  The ALJ erred by disregarding Dr. Delawyer's opinion.

4)  The ALJ erred by disregarding Petitioner's sister's testimony.

The Court will take each argument in order.

**V.**
**Discussion**

**A.    Failure to determine whether or not drug use was material or not material.**

Petitioner argues that the ALJ erred by not determining the materiality of her drug use

under 20 C.F.R.  §§ 404.1535 or 416.935.  However, materiality of drug use is not addressed

until after the five-step analysis is completed and the Petitioner is found to be disabled.  *See*

*Bustamante v. Massanari,* 262 F.3d 949, 955 (9th Cir. 2001).  In *Bustamante*, the Ninth Circuit

stated "[i]f the ALJ finds that claimant is not disabled under the five-step inquiry, then the

claimant is not entitled to benefits and there is no need to proceed with the analysis under 20

C.F.R.  §§ 404.1535 or 416.935." *Id.*  If there is a finding of not disabled, then there is no need

to determine whether a finding of disabled is as a result of drug use.  In this case, the ALJ

determined that Petitioner was not disabled and thus materiality of drug use was not a proper

issue for analysis.

**B.    Failure to Provide Specific, Clear and Convincing Evidence for Rejecting Petitioner's Pain Testimony.**

Petitioner asserts that the ALJ failed to provide adequate justification for discrediting her

testimony.  She argues that the ALJ failed to cite specific reasons for not accepting her testimony regarding the pain she was feeling.  Petitioner also asserts that she was forthright in her disclosures about drug use and that the majority of the record is consistent with Petitioner's disclosures.

Courts have consistently held that the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *See Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); and *Saelee v. Chater,* 94 F.3d 520, 522 (9th Cir. 1996).  A claimant may not rely upon mere allegations of pain to meet her burden of proof, but must substantiate such allegations with objective medical findings which could reasonably be expected to produce the alleged pain or other symptoms.  *See* 42 U.S.C. §§ 423(d)(5)(A) and 1382c(3)(H).  The effect of pain can be assessed within an individual's functional capacity and then an ALJ may evaluate the credibility of a claimant's statements about the pain.  *Id.* Although a claimant may produce objective medical evidence of an underlying impairment, an ALJ may nonetheless reject the claimant's testimony about the severity of the pain if the ALJ can state specific, clear, and convincing reasons for doing so.  *Smolen v. Chater,* 80 F.3d 1273, 1281-82 (9th Cir. 1996).  An ALJ is not required to believe every allegation of disabling pain because it would be contrary to 42 U.S.C. § 423(d)(5)(A), and while many medical conditions produce pain it is not always severe enough to preclude gainful employment.  *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989).  Additionally, the Court must affirm the ALJ's decision where the evidence reasonably supports either confirming or reversing it.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2003).

The ALJ declared that he did not find Petitioner fully credible because, although she did suffer some pain and discomfort, the ALJ did not find Petitioner's claims of total disability

**Memorandum Decision and Order - Page 14**

credible.  Regarding Petitioner's chronic back pain, the ALJ determined that the medical

evidence did not support her allegations of pain to the degree alleged.  (AR 27.)  The ALJ noted

from the record that in 2001 Petitioner's MRI on her back was normal and that in December 2002

had only mild scoliosis.  (AR 27.)  The MRI in January 2003 did show a small disc protrusion,

but the bone scan in April was negative and Petitioner was advised to do moderate physical

activity.  (AR 27.)

Regarding Petitioner's mental status, an examination in August 2001 showed Petitioner in

normal limits.  (AR 26.)  In November 2002, her attention was average.  (AR 26.)  Petitioner's

attention and memory were intact and had no difficulty with cognitive activity in January 2003.

(AR 26.)  In addition from February 2003 through July 2004, Petitioner's mental status exams

were within normal limits.  (AR 26.)  The ALJ also stated that Petitioner's hypertension and

headaches are controlled with medication.  (AR 27.)  Her ovarian cyst had been resolved and

there was no evidence of continued problems as a result of the right finger fracture.  (AR 27.)

The ALJ noted the specific instances above, in addition to others, to demonstrate the evidence

from the record upon which he based his decision.  It is not the role of this Court to second guess

the ALJ's decision, but rather to ensure that it is based upon sufficient evidence.  The ALJ has

provided ample evidence upon which he relied in finding the Petitioner's testimony about the

severity of her pain not credible.

In addition to medical evidence, an ALJ may rely upon other techniques to evaluate

credibility.  As the Ninth Circuit stated, "In determining credibility, an ALJ may engage in

ordinary techniques of credibility evaluation, such as considering claimant's reputation for

truthfulness and inconsistencies in claimant's testimony."  *Burch v. Barnhart*, 400 F.3d 676, 680

(9th Cir. 2005).  The ALJ may consider:  an individual's daily activities; location, duration and

frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Additionally, if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The issue is not whether the Court agrees with the ALJ's credibility assessment, but whether the assessment is sound.

In this instance, the ALJ determined that Petitioner's daily activities were not significantly limited. (AR 27.) She is able to care for her three children, travel, do laundry, some housework, and some cooking. (AR 27.) Petitioner argues that this is a misstatement of the facts. However, it is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when there is conflicting evidence. *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). Here, there is substantial evidence from statements made by Petitioner that she performed these tasks in varying capacities. (AR 182-83, 228.) While there was also testimony that Petitioner could not do these things without help, it is not the role of the Court to substitute its judgment unless the ALJ's decision was not based upon substantial evidence. Thus, while there exists some conflicting evidence, the ALJ made his decision based on substantial evidence and the Court will not engage in second guessing.

In his decision, the ALJ discussed the Petitioner's substance abuse as a means of

**Memorandum Decision and Order - Page 16**

determining her reputation for truthfulness.  The ALJ cites to the record to demonstrate that

Petitioner reported only using crank at the age of  twenty-three (23), then in January 2003

reported she had used crank three or four months earlier at the age of twenty-nine (29).  (AR 27.)

The ALJ is able to evaluate Petitioner's conflicting statement about drug use as a means to

determine credibility.  There is substantial evidence in the record to support the ALJ's finding

that the Petitioner was not fully credible as the ALJ took into consideration Petitioner's daily

activities, her inconsistencies regarding substance abuse, as well as the medical evidence

regarding her pain.  Furthermore, even if the evidence could admit to an interpretation more

favorable to Petitioner, so long as the ALJ's interpretation was rational, the Court must uphold

that decision where the evidence is susceptible to more than one rational interpretation.  *See*

*Burch*, 400 F.3d at 680-81.  Therefore, the Court finds that there is substantial evidence in the

record to support the ALJ's finding that Petitioner was not fully credible.

## C.      Failure to Provide Specific, Clear and Convincing Evidence for Rejecting Dr. Delawyer's opinion.

Petitioner argues that the ALJ rejected the opinion of Dr. Delawyer without citing

specific reasons.  However, it is clear from the ALJ's decision that the opinion of Dr. Delawyer

was accepted and discussed, with no mention of rejection.  (AR 22-23.)  Furthermore, the ALJ's

findings are consistent with the opinion of Dr. Delawyer.  Petitioner cites to the following

paragraph as evidence that Dr. Delawyer's opinion was rejected.

> Given the current poorly controlled depressive symptoms, as well as significant
> panic symptoms, she would likely experience *difficulty* remembering, sustaining
> concentration, persisting with tasks, interacting with others, and generally being
> adaptable in the work setting.

(AR 229.) (emphasis added)

The ALJ's decision is consistent with this quoted language.  The ALJ proposed a series of

**Memorandum Decision and Order - Page 17**

hypotheticals based upon the above limitations, and the vocational expert gave examples of specific jobs that would be able to be performed by someone with the above mentioned limitations.  (AR 467-71.)  The question the ALJ had to answer was not whether Petitioner would have difficulty adapting to a work setting, but whether her limitations were totally disabling.  (AR 27.)  The ALJ recognized Petitioner's limitations and listed nearly a full page of accommodations she would need to be successful in an employment situation.  (AR 27-28.)  The vocation expert testified that there are jobs in the national economy that would meet these requirements.  No specific reasons for rejection are required, because he ALJ did not reject Dr. Delawyer's testimony regarding Petitioner's severe limitations.

**D.      Failure to Provide Specific, Clear and Convincing Evidence for Rejecting Petitioner's sister's Testimony.**

The ALJ specifically cited Ms. Faulkner's testimony and made no mention of rejecting it. (AR 26.)  Furthermore, the ALJ's findings are consistent with Ms. Faulkner's testimony regarding Petitioner's limitations by finding that she could only work at a "low stress level." (AR 28.)  Low stress level was described as:  "a low production rate, essentially no working with the general public, minimal supervision and minimal interaction with supervisors and co-workers, minimal work setting changes."  (AR 28.)  The ALJ recognized that Petitioner had many restrictions and was only able to perform a few limited categories of employment.  (AR 28.)  The ALJ also did not disregard Petitioner's sister's, Ms. Faulkner, testimony, and thus he did not need to provide reasons for rejection.

**VI.**
**Conclusion**

Based on its review of the entire record, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error.  Therefore, the

**Memorandum Decision and Order - Page 18**

Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be affirmed.

### ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act be **AFFIRMED** and that the petition for review be **DISMISSED**.



DATED: March 14, 2007

Honorable Mikel H. Williams
United States Magistrate Judge